UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

JESUS ALVAREZ-PEREZ

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil File No. 00-2657 (JMR/ESS)

**REPORT AND RECOMMENDATION**

Jesus Alvarez-Perez, Federal Correctional Institution, Box 1500,Waseca, MN 56093-0741, Petitioner, pro se.

Assistant United States Attorney Mary Jo Madigan, Esq., for Plaintiff United States of America.

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's pro se application for habeas corpus relief under 28 U.S.C. § 2241. [Docket No.1]. Respondent has filed a responsive memorandum asking the Court to dismiss the petition [Docket No. 7]. These proceedings have been referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c)(1). For the reasons stated below, the Court recommends that the petition for writ of habeas corpus be dismissed with prejudice.

## I. INTRODUCTION

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241. Petitioner, an excludable alien and a Cuban national who arrived in this country during the Mariel boatlift, commenced this action while housed at the Federal Correctional Institution, Waseca, Minnesota. Petitioner asserts that he is being indefinitely detained pending his repatriation to Cuba

MAR 9 2001

without an opportunity for a hearing concerning his release.

## II. FACTUAL BACKGROUND

In 1980, some 125,000 undocumented Cuban citizens arrived in the United States from the port of Mariel, Cuba. Approximately 25,000 of the Mariel Cubans acknowledged prior criminal records in Cuba or their release from Cuban prisons and mental facilities for passage to the United States. Arriving Mariel Cubans were reviewed by United States officials, and the majority were released on immigration parole pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5).

The United States has actively sought to return the Mariel Cubans to Cuba, particularly those who returned to INS custody after committing serious crimes while on immigration parole in the United States. In 1984, the United States and Cuba entered a migration agreement under which Cuba agreed to repatriate 2,746 named Mariel Cubans. However, following the repatriation of approximately 200 Cubans, Cuba suspended the agreement in May 1985. In 1987, Cuba and the United States agreed to reinstate the agreement, a decision that resulted in riots by Cuban detainees ending in considerable destruction to federal facilities in Atlanta, Georgia, and Oakdale, Louisiana. Following the riots, new immigration parole and repatriation review programs were developed by the Attorney General.

Under the regulations at 8 C.F.R. § 212.12, the cases of Mariel Cubans who remain in the Attorney General's custody are reviewed annually to determine their suitability for immigration parole. This periodic reconsideration for parole includes a review of the alien's records and a personal interview during which the alien may be accompanied by a representative and may present oral and written information in support of his release on parole. See 8 C.F.R. § 212.12(d)(4). Consideration is also given to the alien's institutional progress, including participation in available

educational and vocational programs, as well as his ties to the community, his criminal and disciplinary records, psychological evaluations, and any other information that is probative of whether the detainee's parole is in the public interest. See 8 C.F.R. §1182(d)(5)(A); 8 C.F.R. § 212.12(b) and (d).

The United States has been thus far unable to reach an agreement with Cuba as to the return of excluded Mariel Cubans not named in the original 1984 agreement.

Petitioner entered the United States on May 25, 1980, as part of the Mariel boatlift. At that time he was released on immigration parole. However, on April 6, 1998, the INS commenced removal proceedings against Petitioner by filing a Notice to Appear with the Immigration Court. The papers charged that Petitioner could be removed under four sections of the INA, relating to his criminal convictions. Petitioner had by that time pled guilty and been convicted in the state of Florida on charges of Possession of Cocaine With Intent to Sell (May 2, 1988), Robbery With a Weapon (February 2, 1989), Aggravated Assault With a Deadly Weapon (November 29, 1993), and Accessory After the Fact (related to Trafficking of Cocaine) (May 5, 1997). There were also two probation violations that had resulted in additional jail time. Petitioner conceded the charges of removability. Based on the type and severity of Petitioner's criminal convictions, the Immigration Judge found Petitioner ineligible for any available relief from removal and ordered him removed to Cuba. Petitioner was released from state custody and turned over to the INS civil immigration custody awaiting removal on May 10, 1999. He was ultimately transferred to the Federal Correctional Institution in Waseca, Minnesota.

Petitioner's custody status is subject to an annual review under the Cuban Review Plan to determine his suitability for release. Reviews in 1999 and 2000 yielded a recommendation that Petitioner be detained pending his removal from the United States. The detention decision was

upheld upon review by the Headquarters, INS office in Washington, D.C.

A 2001 review under the Cuban Plan was to be held on or about February 2001. The Court does not have before it any documentation with regards to a 2001 review at this time.

## III. DISCUSSION

Petitioner challenges his continued detention awaiting removal to Cuba. Petitioner specifically challenges his detention without a hearing concerning his release. The Court construes the cited ground for relief as a general challenge to the Attorney General's right to indefinitely detain him and a challenge to the sufficiency of the review procedures under the Cuban Review Plan as set forth in 8 U.S.C. § 212.12.

Under 8 U.S.C. § 1231 (1998), Congress authorized the detention of aliens and criminal aliens for a 90-day period, or removal period, following the issuance of the final order of removal. Petitioner's removal period expired 90 days after the final order issued July 24, 1998. Petitioner argues that because the removal period has expired, he should be placed on supervised release. This argument is refuted by the applicable statutes and case law.

First, the Court notes that 8 U.S.C. § 1231(a)(6) explicitly authorizes the Attorney General to retain custody beyond the removal period of any inadmissible alien, as well as criminal and other dangerous aliens. Further, courts considering the argument by Mariel detainees that the INA does not authorize the indefinite detention of excludable aliens have uniformly resolved this question against the petitioners. The federal courts of appeals consistently hold that the Immigration and Nationality Act authorizes the Attorney General to detain excludable Mariel Cubans pending their repatriation, even though chances of repatriation are slim. See, e.g., Gisbert v. U.S. Attorney General, 988 F.2d 1437, 1447 (5th Cir. 1993) (INA authorizes detention of petitioners until United States can deport them); Barrios v. Thornburgh, 754 F.Supp. at 1539 (W.D.Okl. 1990) (noting the legislative

history of the INA); Alvarez-Mendez v. Stock, 746 F.Supp. 1006 (C.D.Cal. 1990) (Attorney General has power to detain excludable aliens not suitable for parole) aff'd, 941 F.2d 956 (9th Cir. 1991), cert. denied, 113 S.Ct. 127 (1992); Sanchez v. Kindt, 752 F.Supp. 1419 (S.D.Ind. 1990) (continued detention of an excludable alien did not violate INA; Attorney General has authority to deport alien indefinitely where deportation is not practicable); Carrera-Valdez v. Perryman, 211 F.3d 1046, 1048 (7th Cir.2000); Fernandez-Santana v. Chandler, No. 98-6453, 1999 WL 1281781, at *1 (6th Cir. Dec. 27, 1999) (unpublished order); Gonzalez v. Luttrell, No. 96-5098, 1996 WL 627717, at *1 (6th Cir. Oct. 29, 1996) (unpublished order); Garcia-Mir v. Meese, 788 F.2d 1446, 1453 (11th Cir.1986); Palma v. Verdeyen, 676 F.2d 100, 103 (4th Cir.1982); but see Rodriguez-Fernandez v. Wilkinson, 654 F.2d 1382, 1389 (10th Cir.1981) (applying law in effect before recent amendments). See also Chi Thon Ngo v. Immigration and Naturalization Serv., 192 F.3d 390, 398 (3d Cir.1999) (continued detention of Vietnamese excludable alien constitutionally permissible); Zadvydas v. Underdown, 185 F.3d 279, 285 (5th Cir.1999), cert. granted, No. 99-7791, 2000 WL 38879 (Oct. 10, 2000) (continued detention of resident alien did not violate his due process rights). It now appears generally settled that the Attorney General has the implicit authority to detain for extended periods those excludable aliens who are neither suitable for release on parole nor susceptible to prompt deportation. See, e.g., Guzman v. Tippy, 130 F.3d 64, 66 (2d Cir.1997); Barrera-Echavarria v. Rison, 44 F.3d 1441, 1446 (9th Cir.1995)(en banc), cert. denied, 516 U.S. 976 (1995). The court therefore rejects Petitioner's claim that his detention is unlawful.

The court likewise rejects any claim that Petitioner was denied due process. The INS has established regulations to provide an annual review of the status of Mariel Cubans detained by the INS. 8 C.F.R. § 212.12.(a). It appears Petitioner has been afforded review under these procedures, and the court notes that the due process protections extended to excluded aliens are quite limited. See

Shaugnessy v. United States ex rel. Mezei, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed.956 (1953) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.")(internal quotations and citations omitted). Petitioner did not allege that the Cuban Review Panel failed to follow the procedures set out in 8 C.F.R. § 212.12. Accordingly, he has no due process claim.

Next, to the extent petitioner asserts his rights under the Sixth Amendment have been violated, his claim fails. The Sixth Amendment extends to defendants in criminal proceedings. See U.S. Const. Amend. VI. Petitioner is detained under civil immigration authority, and the Sixth Amendment does not apply to these circumstances. See, e.g., Fernandez Luiz v. Luttrell, 46 F.Supp.2d 754, 757 (W.D.Tenn.1999).

Finally, we note that international law provides Petitioner no relief. International law controls only in the absence of a treaty, a controlling executive or legislative act, or a judicial decision. See Guzman, 130 F.3d at 66; Barrera-Echavarria, 44 F.3d at 1451; Gisbert, 988 F.2d at 1448; Alvarez-Mendez, 941 F.2d at 963; Garcia- Mir, 788 F.2d at 1455; see also Zadvydas, 185 F.3d at 285 n. 4. Because the Attorney General has the statutory authority to detain Petitioner, international law does not control.

Judicial review of immigration matters, including the detention of criminal aliens with final orders of removal, is limited. See Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999). This Court has applied its limited power of review to the present case, and can find no reason to grant the petition for habeas corpus.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for writ of habeas corpus relief [Docket No.1], be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: March 6, 2001

E. S. SWEARINGEN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.